Mathis and Mathis v. The State of Florida—Syllabus.

LUTHER MATHIS AND JUDSON MATHIS, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. In a criminal, as in a civil, case it is too late after a plea to the merits for the defendant to demand a bill of particulars. Whlie the trial judge would have the right, if he saw fit so to do, to order the filing of a bill of particulars after the plea had been interposed, at any time before the trial is begun, it rests entirely within his discretion, and no error can be predicated upon his refusal so to do.

2. The proper time to interpose a motion for a bill of particulars is before pleading to the merits; in certain classes of cases, such as prosecutions for embezzlement, nuisance.

barratry, conspiracy to cheat and defraud, libel,   under
liquor acts, adultery, perjury, birbery, etc.,   where   the
counts or charges in an indictment or information are so
general in their nature that they do not fully advise the
accused of the crime with which he is charged, so that he
could prepare his defense, upon a proper showing   being
made to the trial court by the defendant in a motion, veri-
fied by affidavit, the court has the power to order the furn-
ishing of a bill of particulars   by   the   prosecution,   and
should do so.

3. An application for a bill of particulars in a criminal case is
not founded upon a legal right, but is a   matter   resting
within the sound discretion of the court, depending entire-
ly upon the nature and circumstances of each particular
case as they appear to the court before whom the trial is
had, and the refusal of the trial judge to grant such   a
motion will not be disturbed or reversed by an appellate
court, unless there was an abuse of such discretion.

4 Motions for bills of particulars in criminal cases should par-
particularly set forth the portions of the indictment or in-
formation which the defendant claims to require amplifi-
cation by bill of particulars and point out to   the   court
wherein he desires a fuller statement of the facts.

5. Under the system of criminal pleading   prevailing in this
State, the forms of indictments and informations gener-
ally used, we can conceive of   but few   criminal   cases
wherein it would be necessary to order a bill of particu-
lars.

6. The better practice is to postpone the swearing in chief of
the jurors until the full panel is obtained, so as to allow
the longest possible time for peremptory challenges, but,
in the absence of a statutory provision, the rule is that
the time and manner of swearing jurors in chief,   after
they have been examined on voir dire and an oppportunity
given for challenges, are within the sound judicial discre-
tion of the court, the exercise of which   will not be dis-
turbed by an appellate court unless clearly abused.

7. While defendants upon trial for crime should be protected in the proper exercise of their right of peremptory challenge, yet such right must be seasonably exercised before the jurors are sworn in chief; otherwise it is waived.

8. If the court erroneously overrules a challenge for cause, or erroneously refuses to allow a venireman to answer one of the questions propounded to him, or erroneously sustains objections interposed by the State to certain questions propounded to a venireman, and thereafter the defendant excludes the obnoxious juror by a peremptory challenge, he can not be injured by such ruling unless it appears that before the jury was sworn his quiver of peremptory challenges was exhausted.

9. It is within the judicial discretion of the trial court to excuse a venireman, and his ruling will not be disturbed or rexersed by an appellate court, unless an abuse of a sound judicial discretion is shown.

10. Where no argument is made concerning errors which have been assigned, such errors will be deemed and treated as abandoned.

11. It is within the sound judicial discretion of the court to control the detailed examination of witnesses, and, unless an abuse of this judicial discretion is shown, an appellate court will not disturb or reverse the ruling made concerning same.

12. The utmost care should be used by the trial judges, especially in cases where human life is involved, not to let any expression fall, either by questions or otherwise, that is capable of being interpreted by the jury as an index of what he thinks of the prisoner, his counsel or his case.

13. The rule laid down in Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235, that section 2920 of Revised Statutes requiring the charge of the court in capital cases to be in writing is mandatory, refers to charges on the merits given to the jury before they have retired to consider of their verdict, and not to mere directions to the jury as to the form of the verdict which they have already found

and presented to the court finding the defendants guilty of an offense less than capital.

14. Under the provisions of section 1092 Revised Statutes, only such charges as were actually given can be excepted to through the medium of a motion for a new trial. Refusals to give requested instructions can not be excepted to in this manner, but exceptions to such refusals must be taken and noted at the time of such refusals, otherwise they can not be considered on writ of error.

15. In considering an objection to a portion of a charge the entire portion bearing on the subject may be considered, and if the objection be removed when the entire portion is taken together, there is no ground of complaint.

16. There can be an accessory before the fact in the crime of murder in the third degree, and in manslaughter.

17. Where an error is assigned to the effect that the court erred in not sustaining the motion for a new trial on a certain enumerated ground thereof, and counsel in his brief under said assignment discusses an entirely different ground, we will treat said error as abandoned.

18. The correctness of a charge on a higher grade of offense than that of which defendants have been convicted becomes immaterial and no error can be predicated thereon.

19. It is not required that the place where the deceased died should be stated in the indictment.

20. Indictment examined and held to give the dates, places and acts with sufficient definiteness to put the defendants upon full notice of the offense with which they were charged therein, and not to be open to attack on the ground of vagueness and indefiniteness.

21. A motion in arrest of judgment is not a proper remedy for a wrong verdict.

22. Evidence examined and found sufficient to support the verdict.

4 S. C.

This case was decided by Division A.

Writ of error to the Circuit Court for Hamilton County.

The facts in the case are stated in the opinion of the Court.

*R. B. Bullock,* for Plaintiffs in Error.

*J. B. Whitfield,* Attorney-General, for the State.

SHACKLEFORD, J.

Judson Mathis, one of the plaintiffs in error, and Lewis Hogans were jointly indicted for murder in the first degree, and in the same indictment Luther Mathis, the other plaintiff in error, was charged with being accessory before the fact of such murder, said indictment being found at the Fall term, 1902, of the Circuit Court for Hamilton county. A severance was granted as to the said Lewis Hogans, and, at the same term of court at which the indictment was found, the plaintiffs in error, hereinafter referred to as the defendants, were tried together, which said trial resulted in the said Judson Mathis being convicted of murder in the third degree and the said Luther Mathis of being accessory before the fact, and each of said defendants was sentenced to be confined in the State prison at hard labor for a term of twenty years. From this judgment and sentence the defendants seek reversal by writ of error.

The first assignment of error is that "the court below erred in refusing to grant the motion of the plaintiff in error, Luther Mathis, for a bill of particulars."

In order to properly understand the motion referred to in said assignment it is advisable to set forth the indictment as well as said motion. Omitting the formal parts, the indictment reads as follows:

"The grand jurors of the State of Florida, duly chosen, empannelled and sworn diligently to inquire and true presentment make in and for the body of the county of Hamilton, upon their oath present that Judson Mathis and Lewis Hogans, on the third day of May, A. D. 1902, in the county of Hamilton and State of Florida, with force and arms and a certain deadly weapon, to-wit: a rifle, loaded with gunpowder and leaden bullets, which the said Judson Mathis then and there had and held in his hands, in and upon one William Massey unlawfully and from a premeditated design to effect the death of the said William Massey did make an assault; and the said Judson Mathis did then and there unlawfully and from a premeditated design to effect the death of the said William Massey shoot off and discharge the rifle aforesaid against, upon and into the body of one George Riley, and the said Judson Mathis did then and there unlawfully and from a premeditated design to effect the death of the said William Massey, strike, penetrate and wound the said George Riley with one of the leaden bullets aforesaid so shot off and discharged out of the rifle aforesaid, thereby giving and inflicting unlawfully and form a premeditated design to effect the death of the said William Massey, to and upon the said George Riley, in and upon the body of the said George Riley, one mortal wound of depth and breadth to the grand jurors unknown, of and from which said mortal wound the said George Riley did languish, and languishing did live till the 4th day of May, A. D. 1902, on which said 4th day of May, A. D. 1902, the said George Riley

of and from the mortal wound aforesaid did die; and the said Lewis Hogans was then and there present, unlawfully and from a premeditated design to effect the death of the said William Massey, aiding, abetting, urging and commanding the said Judson Mathis· the felony aforesaid to do and commit. And the jurors aforesaid upon their oath aforesaid do further present that Luther Mathis,·before the felony and murder aforesaid was in manner and form committed as aforesaid, towit: on the 1st day of February, A. D. 1902, and on the 3rd day of May, A. D. 1902, and on divers other days between the said 1st day of February, 1902, and 3rd day of May, 1902, in the county of Hamilton and State of Florida, was accessory thereto before the fact, and did then and there unlawfully and from a premeditated design to effect the death of the said William Massey aid, incite, move, hire, counsel, comfort and procure the said Lewis Hogans and the said Judson Mathis the felony and murder aforesaid in manner and form aforesaid to do and commit, against the peace," &c.

The motion interposed by the defendant Luther Mathis, the overruling of which is made the basis of the first error assigned, omitting the formal parts, reads as follows: "Now comes the defendant Luther Mathis and shows to the court that he is indicted in the above entitled prosecution as an accessory before the fact to the alleged murder of one George Riley, and that the said indictment charges him with accessorial acts beginning on the first day of February, 1902, and ending on the third day of May, 1902, and on divers other days between the said first day of February, 1902, and the said third day of May, 1902; that in the said indictment the nature and character of the said acts are not set out or stated and that he is not prepared to defend himself against

the same, not being advised of the nature, character or
time when the said acts occurred, and taht he is in abso-
lute ignorance of the facts which may be attempted to be
proved by the State against him.   He therefore moves
the court to require the State's Attorney to furnish to
this defendant the particulars of the said acts so as
aforesaid alleged."

To this motion was appended the affidavit of said de-
fendant to the effect that the statements made therein
were true.

The following ruling was made by the trial judge upon
said motion:   "There being nothing presented to the
court except what appears upon the fact of the affidavit
and the indictment, the court overruled defendant's mo-
tion, to which ruling the defendant Luther Mathis by
counsel then and there excepted and exceptions were
duly noted."

Prior to the interposition of said motion each of the
defendants had been arraigned and each had interposed
a plea of not guilty  We are of the opinion that the mo-
tion was made too late and that it should have been in-
terposed prior to pleading to the merits, and that by so
pleading the right to a bill of particulars, if any such
right existed in the instant case, was waived. We have
examined a large number of cases in which the right to a
bill of particulars was considered and passed upon, as
will appear later on in this opinion, and it seems to be
established by the great weight of authority that the
proper time to apply therefor is before pleading to the
merits.   This court has held in a civil case that "it is
too late after plea to the action, for the defendant to de-
mand a bill of particulars."   Waterman v. Mattair, 5
Fla. 211.  We know of no reason why a like rule should
not apply in a criminal case. 3 Ency. Pl. & Pr. 522, 554.

While the trial judge would have the right, if he saw fit so to do, to order the filing of a bill of particulars after the plea had been interposed, at any time before the trial is begun, it rests entirely within his discretion, and no error can be predicted upon his refusal so to do. Waterman v. Mattair, *supra*.

We might stop here and refuse to further consider this error, but, in view of the fact that the decision of this court in the case of Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938, wherein the practice of allowing bills of particulars in criminal cases was discussed, seems to have been misconstrued by some members of the bar, we deem it well to further examine the question. Counsel for defendants has cited a number of cases in his brief upon this point, every one of which we have carefully examined and find that not one of them sustains his contention. We have also examined all the authorities bearing upon this point in the full and able brief of the Attorney-General, as well as a number of additional authorities. We think it well to give a summary of our investigations as well as the conclusion which we have reached.

One of the earliest English cases which we have been able to find upon the subject, and which seems to be a leading case, is Rex v. Hodgson, 3 Carr. & P. 422, decided in 1828. This was a prosecution for embezzlement, and the defendant filed an affidavit in which he recited that he was wholly unacquainted with the particular acts of embezzlement intended to be charged against him, and also that he was advised, and verily believed, that, in order to his defence, it was necessary that he should be furnished with a particular of the specific charges intended to be brought forward. Counsel thereupon moved for an order directing the prosecutor to furnish a particular of the charges, arguing that, as the indictment gave

the prisoner no knowledge of the time at which the offences were supposed to have been committed, nor of the amount of the money, nor of the persons from whom it was said to have been received; it was wholly impossible that the prisoner could make his defence; because; as a coach-office clerk, he had received many hundred sums of money every day, and stating that he relied upon the authorities collected in Carr. Supp., which book unfortunately is not accessible to us.  Vaughan, B., stated that he had examined the passages of the work referred to and thought the authorities there cited were very much to the purpose, and that he thought the proper practice in such a case would be to apply to the prosecutor for a particular, and, if refused, the court would then grant an order.

In the case of Reg. v. Flower, reported in 3 Jur. 558, decided in 1839, which was a prosecution for a nuisance, defendant, before the trial, moved for a rule requiring the prosecutor to give him a note of the several acts of nuisance he intended to prove, and of the dates on which they were alleged to have been committed.  The motion was granted as to the acts but denied as to the dates. Also see, to the same effect, Rex. v. Curwood, 3 Adolph. & E. 815, prosecution for a nuisance; Goddard v. Smith, 6 Mod. Rep. 373; prosecution for barratry; Reg. v. Rycroft, 6 Cox Cr. Cas. 76, prosecution for conspiracy to cheat and defraud; Reg. v. Stapylton, 8 Cox Cr. Cas. 69, prosecution for conspiracy to defraud; Rex v. Bootyman, 5 Carr. & P. 300, prosecution for embezzlement; Rex v. Hamilton, 7 Carr. & P. 448, prosecution for conspiracy to defraud.  The question seems to have been oftener before the court of Massachusetts than any of the other courts of this country.   In Commonwealth v. Davis, 11 Pick. 432, which was a prosecution for being a common bar-

rator, it was held that the defendant must be furnished
with a note of the particular acts of barratry intended to
be proved against him, the court stating that the "bill of
particulars affects the proof and mode of trial only, and
not the indictment; it is no part of the record, it is not
open to demurrer. It is not a matter of technical nicety;
and it is to give notice and guard against surprise on the
trial; under the regulation of the court." In Common-
wealth v. Snelling, 15 Pick. 321, it was held in a prosecu-
tion for libel that the court has the power to direct a bill
of particulars to be seasonably furnished. Also see the
leading cases of Commonwealth v. Giles, 1 Gray, 466,
Commonwealth v. Wood, 4 Gray, 11, each of which was a
prosecution for being a common seller of intoxicating
liquors, wherein it was held by the court that the requir-
ing of a bill of particulars is within the discretion of the
presiding judge, and his ruling thereon is not subject to
exception.   To the same effect are Commonwealth   v.
Farrell, 105 Mass. 189, a prosecution for keeping a liquor
nuisance, and Harrington v. Harrington, 107 Mass. 329,
which was a libel for divorce  charging adultery  and
wherein, on page 334, the court used the following lan-
guage: "The refusal of the court to order further specifi-
cations is not the subject of exceptions.   In all cases,
civil and criminal, the question whether bills of particu-
lars or specifications shall be ordered is within the dis-
cretion of the presiding judge."    The question has also
been several times before the different courts of New
York.    In the case of People v. Tweed, 63 N. Y. 194,
which was an action brought by the Attorney-General in
the name of The People, under a special statute to recov-
er moneys alleged to have been fraudulently obtained
from a municipal corporation, it was held that the order-
ing of a bill of particulars is within the discretion of the

court below, and its decision is not reviewable on appeal. In the case of Tilton v. Beecher, 59 N. Y. 176, which was an action for *crim. con.*, counsel for defendant filed a motion that plaintiff be required to deliver to denefdant's attorney "a statement in writing of the particular times and places at which he (plaintiff) expects or intends to prove that any acts of adultery or criminal intercourse took place between the defendant and the wife of the plaintiff. The motion was denied, as is stated in the order, "on the ground that the court had no power to grant the same, and on the other grounds stated." no other grounds, however, being stated in said order. Judge RAPALLO, in delivering the opinion of the court, used the following language: "The only question arising upon the present appeal, which is reviewable in this court, is whether or not the court below had power to grant the application of the defendant. If it possessed that power, and under the mistaken impression that the power did not exist, denied the application on that ground, we have jurisdiction and it is our duty to correct that error of law, and remit the case to the court below, with a direction that the motion be heard. * * * It is not contended on the part of the appellant, and it would have been useless to contend, that the present application was founded upon legal right, or that it did not rest in the discretion of the court, nor that if the order appealed from was the result of a fair exercise of that discretion we should be asked to review it." It will be seen that the reason given by the judge below for refusing to grant the motion, the lack of power, was strikingly like the reason given by the Circuit Judge in the case of Thalheim v. State, *supra*, as found on page 175. In his opinion Judge RAPALLO collates a number of English and American authorities bearing upon the

granting of bills of particulars, specifying the classes of criminal cases in which said bills had been awarded, and finally held that the court had the power to grant the motion, and that the case would be remanded in order that the judge might exercise his discretion in passing upon it. The following case are also instructive:    Eighmy v. People, 79 N. Y. 546, a prosecution for perjury; Ball v. Evening Post Pub. Co., 38 Hun, 11, an action for libel; People v. Bellows, 2 N. Y. Crim. Rep. 12, a prosecution for embezzlement; People v. Jaehne, 4 N. Y. Crim. Rep. 161, a prosecution for bribery; McDonald v. State, 126 Ill. 150, 18 N. E. Rep. 817, a prosecution for conspiracy to obtain money by false pretenses; Gilmore v. People, 87 Ill. App. 128, likewise a prosecution for conspiracy to obtain money under false pretenses; State v. Hill, 13 R. I. 314, a prosecution for keeping a nuisance; State v. Freeman, 27 Vt. 523; State v. Bacon, 41 Vt. 526; State v. Rowe, 43 Vt. 265; State v. Wooley, 59 Vt. 357, the last four cases being prosecutions under the liquor act; People v. McKinney, 10 Mich. 54, a prosecution for embezzlement; People v. Davis, 52 Mich. 569, 18 N. W. Rep. 362, a prosecution for adultery; United States v. Bennett, 16 Blatch. 338, 24 Fed. Cas. No. 14571, a prosecution for depositing an obscene publication in the mails; United States v. Brooks, 44 Fed. Rep. 749, a prosecution for embezzlement; United States v. Tubbs, 94 Fed. Rep. 356, a prosecution for mailing prohibited matter; State v. Lindgrove, 1 Kan. App. 51, 41 Pac. Rep. 688; State v. Reno, 41 Kan. 674, 21 Pac. Rep. 803, the last two cases being prosecutions under the liquor act; Hamilton v. People, 24 Colo. 301, 51 Pac. Rep. 425, a prosecution for conspiracy to commit burglary; Williams v. Commonwealth, 91 Pa. St. 493, a prosecution for perjury; 3 Rice's Evidence, 67; Wharton's Crim. Pl. & Pr., Sec. 702; Clark's Crim. Proc.

429; Bishop's New Crim. Proc. Sec. 643; Abbott's Trial Brief, Crim. Cases (2nd ed.) 86 2 McClain's Crim. Law, Sec. 976. The practice of delivering to defendant a bill of particulars in a criminal case is held not to prevail in Texas, Missouri, Iowa and California. See State v. Williams, 14 Tex. 98; State v. Quinn, 40 Mo. App. 627; United States v. Ross, Morris (Iowa), 164; People v. Alviso, 55 Cal. 230. The only cases which we have been able to find where the practice of allowing a bill of particulars in a prosecution for murder prevails are in Pennsylvania. See Goersen v. Commonwealth, 99 Pa. St. 388; Commonwealth v. Buccieri, 153 Pa. St. 535, 26 Atl. Rep. 228, and Commonwealth v. Eagan, 190 Pa. St. 10, 42 Atl. Rep. 374. We find that the statutory form for murder in Pennsylvania is very short and general, and in Commonwealth v. Buccieri, *supra,* on page 547, the following language was used: "Before arraignment, if it be made to appear to the court that any injustice is likely to be done the prisoner because of vagueness of the indictment, a bill of particulars may be ordered; this, not because the prisoner has a right to demand it, but because the court, after trial, on proof of surprise or injustice in consequence of the absence of specific averments as to weapon and manner of killing, would set aside the verdict and grant a new trial. * * * If by a bill of particulars, was meant a specification of the evidence to be adduced by the Commonwealth, this the prisoner had no right to ask nor the court any right to direct." In Commonwealth v. Eagan, *supra,* it was held that "in a murder case the district attorney will not be required to file a bill of particulars where it appears that the prisoner and his counsel were present at the preliminary hearing before the justice of peace and heard all the testimony deemed necessary to procure the commitment for

the crime charged in the indictment." See Brass v. State, decided at the present term.

From our investigation of these authorities we have reached the following conclusions, which we believe to be supported by reason as well as the weight of authority: The proper time to interpose a motion for a bill of particulars is before pleading to the merits; that in certain classes of cases, such as are set forth in the foregoing authorities, where the counts or charges in an indictment or information are so general in their nature that they do not fully advise the accused of the crime with which he is charged so that he could properly prepare his defense, upon a proper showing being made to the trial court by the defendant in a motion, verified by affidavit, the court has the power to order the furnishing of a bill of particulars by the prosecution and should do so; such an application or motion, however, is not founded upon a legal right, but is a matter resting within the sound judicial discretion of the court, depending entirely upon the nature and circumstances of each particular case as they appear to the court before whom the trial is had, and the refusal of the trial judge to grant said motion will not be disturbed or reversed by an appellate court, unless there was an abuse of such discretion; such motion should particularly set forth the portions of the indictment or information which the defendant claims to require amplification by bill of particulars and point out to the court wherein he desires a fuller statement of the facts. We will add that under the system of criminal pleading prevailing in this State, the forms of indictments and informations generally used, we can conceive of but few criminal cases wherein it would be necessary to order a bill of particulars.

The second error assigned is that "the court below

erred in swearing in chief, before the completion of the panel of jurors," seven jurors, whose names are set forth. The tenth, eleventh, twelfth and thirteenth errors assigned are all based upon the swearing in chief of certain named jurors singly, and may all be considered together with the second. We are of opinion that, while it may be the better practice to postpone the swearing in chief of the jurors until the full panel is obtained, so as to allow the longest possible time for peremptory challenges, none of these errors is well assigned. O'Connor v. State, 9 Fla. 215. In the absence of a statutory provision, the rule is that the time and manner of swearing jurors in chief, after they have been examined on *voir dire* and an opportunity given for challenge, are within the sound judicial discretion of the court. 12 Ency. Pl. & Pr. 520; Abbott's Trial Brief, Criminal Causes, (2nd ed.) 282; State v. Anderson, 4 Nev. 265; State v. Brown; 12 Minn. 538; People v. Carpenter, 102 N. Y. 238, 6 N. E. Rep. 584; People v. Reynolds, 16 Cal. 129.

The third, fourteenth, fifteenth, sixteenth, twenty-fifth, thirtieth, thirty-third and thirty-sixth errors assigned are all expressly abandoned by counsel for defendants in his brief.

The fourth, fifth and sixth errors assigned are all based upon the action of the trial court in denying the defendants the right to peremptorily challenge certain jurors after they had been sworn in chief. No error was committed in so doing. As was said in Bradham v. State, 41 Fla. 541, 26 South. Rep. 730, "while defendants upon trial for crime should be protected in the proper exercise of their right of peremptory challenge, yet such right must be seasonably exercised *before the jurors are sworn in chief;* otherwise it is waived." Also see O'Connor v. State, *supra;* Wharton's Case, Yelverton, 24.

The seventh assignment of error is based upon the action of the trial judge in restricting the examination by defendants of one of the veniremen. No error was committed in this for the reason that, although the trial judge refused to allow said venireman to answer one of the questions propounded to him, said question was clearly impertinent and another question was propounded to and answered by him, and he was finally peremptorialy challenged by the defendant Luther Mathis, and this did not exhaust the peremptory challenges of said defendant, nor were they exhausted when the panel was completed. Green v. State, 40 Fla. 191, 23 South. Rep. 851.

The eighth error assigned is that "the court below erred in sustaining objection of the State to the *voir dire* examination of the venireman N. W. Marion by counsel for plaintiffs in error." In referring to the record we do not find that the State interposed any objection to any question propounded to said venireman, but that the trial judge did refuse to allow him to answer a certain question. It is sufficient to say that no error was committed here, for the reason that said juror was afterwards peremptorily challenged, and said challenge did not exhaust the peremptory challenges of defendants, nor were they exhausted when the panel was completed. Green v. State, *supra.*

The ninth error assigned is that "the court below erred in challenging for cause the venireman Moses Frink." In turning to the record we find that the challenge to said juror was made by the State and the court sustained the challenge, holding that said venireman was not a competent juror. Said venireman had testified on *voir dire* that he had formed and expressed an opinion, had "heard all about it and had spoken to one of the witnesses; he talked to me about the case." He was properly excused. It is

within the judicial discretion of the trial court to excuse a venireman, and his ruling will not be disturbed or reversed by an appellate court, unless an abuse of a sound judicial discretion is shown. Edwards v. State, 39 Fla. 753, 23 South. Rep. 537; Mims v. State, 42 Fla. 199, 27 South. Rep. 865; Williams v. State, decided at the present term.

The seventeenth, eighteenth, nineteenth and twentieth errors assigned are grouped together in the brief of counsel for defendants and no argument is made concerning them; therefore we treat them as abandoned. Mitchell v. State and Williams v. State, each decided at the present term; Thomas v. State, 36 Fla. 109, 18 South. Rep. 331; Porter v. Parslow, 39 Fla. 50, 21 South. Rep. 574.

The twenty-first error assigned is as follows: "The court below erred in refusing 'to admit in evidence the testimony of the witness Geo. H. Wynn, in answer to the question, "I will ask you to state the exact words you used a while ago." It is sufficient to say that this question was but a repetition and was unnecessary. The question was answered by the witness both before and after the objection, so no injury could have resulted to the defendants. Baker v. State, 30 Fla. 41, 11 South. Rep. 492.

The twenty-second, twenty-third and twenty-fourth errors assigned are grouped together with the twenty-first error by counsel for defendants in his brief and all argued together. Upon examination we find that the several questions propounded by counsel for defendants to the witnesses, Homor Cribbs, and George H. Wynn, the sustaining of objections to which by the State forms the basis of these errors, were confusing and not calculated to properly inform the witness as to the information sought to be elicited. No error was committed. They

were not pertinent to the case and were properly rejected. Wallace v. State, 41 Fla. 547, 26 South. Rep. 713.

The twenty-sixth assignment of error is as follows: "And the plaintiffs in error say that they were denied the full exercise of the right of counsel in their trial and that their said trial was prejudiced by the court in this: first, in sustaining objection of the State to the cross-examination of witness Homer Cribbs, on the ground that such examination was unfair in using towards defendants' counsel, R. B. Bullock, these words, 'If you say he said something when you know he did not you are not fair to the witness, then you are unfair to the witness.'" To say the least of it, this assignment is not very carefully worded and it is not very clear just what counsel means. We have already held that the court did not err in sustaining the objection of the State to the question propounded to the witness by counsel for defendants, and, for that reason, we might well refuse to examine the assignment further. However, on turning to the record, we find that the counsel for defendants stated that he knew when he asked the question that the words repeated by him therein were not the exact words used by the witness, whereupon the court stated that if the attorney had intentionally stated to the witness that he had used certain words when he knew that the witness had not used them, it was unfair to the witness. No error was committed here. It is apparent that the witness was quite illiterate and had difficulty in grasping and understanding the questions propounded to him by the counsel for the defendants.

The twenty-seventh error assigned is not borne out by the record. The court did not say that the question propounded by counsel for defendants to witness was "unintelligible," as set forth in said assignment, but that it

was "hypothetical," and that counsel could put it in different shape. No harm could have resulted to defendants from this.

The twenty-eighth error assigned is as follows: "And the plaintiffs in error say that they were denied the full exercise of the right of counsel, their trial prejudiced and its fairness impaired, in this, that the court below used towards their counsel, R. B. Bullock, these words, 'I think, Mr. Bullock, your head is full of cob-webs.' "

While we do not declare that the remark thus made to counsel constitutes reversible error, we are of opinion that it was ill-advised and unfortunate. As was said by this court in Hubbard v. State, 37 Fla. 156, text 159, 20 South. Rep. 235, "the utmost care should always be used by the trial judges, especially in cases where human life is involved, not to let any expression fall, either by questions or otherwise, that is capable of being interpreted by the jury as an index of what he thinks of the prisoner, his counsel or his case." Also, see Lester v. State, 37 Fla. 382, 20 South. Rep. 232. As was said in State v. Allen, 100 Iowa, 7, text 12, 69 N. W. Rep. 274, "it must be remembered that jurors watch courts closely, and place great reliance on what a trial court says and does. They are quick to perceive the leaning of the court. They are prompt to notice the inclination, even, of the court, and from his conduct, whether properly or not, they will almost invariably arrive at a conclusion as to what the court thinks about the case. Every remark dropped by the court, every act done by him during the progress of the trial, is the subject of comment and conclusion by jurymen. Hence it is that judges presiding at trials should be exceedingly discreet in what they say and do in the presence of a jury, lest they seem to lean toward or

5 S. C.

lend their influence to one side or the other." The following authorities will also prove instructive upon this point: Peeples v. State, 103 Ga. 629, 29 S. E. Rep. 691; Wheeler v. Wallace, 53 Mich. 355, 19 N. W. Rep. 33; Cronkhite v. Dickerson, 51 Mich. 177, 16 N. W. Rep. 371; Griffin v. State, 90 Ala. 596, 8 South. Rep. 670; 21 Ency. Pl. & Pr. 994. The record discloses that the cross-examination of the witness Homer Cribbs, during which the remark to counsel was made by the trial judge which is assigned as error, was greatly protracted, and there had been much repetition of questions by counsel, some of which were couched in vague and confusing language. We apprehend that the remark in question was purely a personal remark addressed by the trial judge to counsel in a spirit of facetiousness, but it would have been better if it had not been made. However, we do not think the error sufficient to warrant a reversal of the case.

The twenty-ninth error assigned is that "the court below erred in declaring, over the objection of plaintiffs in error, the cross-examination of witness Homer Cribbs closed." As already said, we find that the cross-examination of this witness had been much protracted, and we further find that counsel for defendants had been afforded ample opportunity for cross-examination. It is within the sound judicial discretion of the court to control the detailed examination of witnesses, and, unless an abuse of this judicial discretion is shown to the appellate court, it will not disturb, or reverse the ruling. No error is shown here. Baker v. State, 30 Fla. 41, 11 South. Rep. 492; Jenkins v. State, 31 Fla. 196, 12 South. Rep. 677; Buck v. Maddock, 167 Ill. 219, 47 N. E. Rep. 208; Abbott's Trial Brief, Crim. Cases, (2nd ed.) 319.

The thirty-first error is that "the court below erred in not sustaining the motion for a new trial submitted by plaintiffs in error." This motion contains forty grounds, and the only argument made in his brief by counsel for defendants upon this assignment is to refer us to the thirtieth ground of said motion, without even specifying what said ground was, and to cite us to Rev. Stats. section 2920, requiring the charge of the court in capital cases to be in writing, and Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235, construing said statute. We might well refuse to consider this assignment and treat it as abandoned, under the authorities cited *supra* in passing upon some of the other errors. However, we have turned to the record and found that the charge of the court was in writing, that when the jury returned into court with their verdict, it was found not to be in proper form, and the judge orally instructed them as to the *form*, and they then retired and brought in a verdict in proper form in accordance with said instruction. No error was committed here, as the jury had already found the defendants guilty of an offense less than capital. The rule laid down in Hubbard v. State, *supra*, that the statute requiring the charge of the court in capital cases to be in writing is mandatory refers to charges on the merits given to the jury before they have retired to consider of their verdict, and not to mere directions to the jury as to the *form* of the verdict which they have already found and presented to the court finding the defendants guilty of an offense less than capital. See State v. Potter, 15 Kan. 302.

The thirty-second error assigned is based upon a charge of the court defining murder in the third degree. Counsel for defendants in error contends that there can not

be an accessory before the fact in murder in the third degree, and hence said charge was erroneous. This contention is not tenable. See Chapter 4988, acts of 1901, and Rev. Stats. Sec. 2380. There was no error in this charge. We further discuss this point in considering the thirty-ninth assignment of error.

The thirty-fourth and thirty-fifth errors are based upon the refusal of the trial court to give certain requested instructions. We find that no exceptions were taken to the refusal to give these instruction. They could not be excepted to in a motion for a new trial. Lester v. State, 37 Fla. 382, 20 South. Rep. 232.

The thirty-seventh and thirty-eighth errors are based upon the action of the court in giving certain portions of instructions to the jury. We have carefully examined said instructions and are of the opinion that, taken as a whole, they were not erroneous. Gray v. State, 42 Fla. 174, 28 South. Rep. 53; Kennard v. State, 42 Fla. 581, 28 South. Rep. 858.

The thirty-ninth error is based upon a charge given by the court to the effect that there may be an accessory before the fact to the offense of manslaughter. Under Revised Statutes, sections 2354, 2355, whoever counsels, hires or otherwise procures a felony to be committed may be indicted and convicted as an accessory before the fact. Murder in the third degree is a felony. Rev. Stats., secs. 2380 and 2352, constitution of 1885, Article XVI. section 25, Chap. 4988 of acts of 1901, make the wanton or malicious shooting at or into any dwelling or any other house which is being used or occupied a felony. The unlawful killing of a human being without any design to effect death by one who wantonly or maliciously shoots at or in any dwelling or any other house which is

being used or occupied is murder in the third degree. As we have already said above, there can be an accessory before the fact to this offense. We do not see why there could not also be an accessory before the fact to the offense of manslaughter, under certain circumstances, whether accomplished by commission or omission. Rev. Stats., sections 2354 and 2355. Be that as it may, no harm resulted from this instruction.

The fortieth error assigned is that the court erred in not sustaining the motion for a new trial on the twenty-eighth ground thereof. This ground of said motion is not the one discussed by counsel in his brief under this assignment, and hence we treat it as abandoned.

The forty-first error is not mentioned by counsel in his brief, and is, therefore, abandoned.

The forty-second, forty-third and forty-fourth errors are based upon the refusal of the trial court to give certain charges in the form in which they were asked, and in modifyinig and then givinig them. No harm could have resulted to defendants from this. The charges as asked were erroneous and as modified and given they relate to a higher offense than that of which they were convicted. Richard v. State, 42 Fla. 528, 29 South. Rep. 413.

The forty-fifth and forty-sixth errors are also based upon the refusal of the trial court to give certain requested charges, which charges we have examined and find to be clearly erroneous, and, therefore, they were properly refused.

The forty-seventh and forty-eighth errors are based upon the action of the trial court in overruling the motions in arrest of judgment interposed by the defendants. The defendant Luther Mathis interposed a motion, and

the defendants interposed a joint motion, in arrest of judgment. These motions question the sufficiency of the indictment, alleging that it is vague, insufficient and indefinite; that it fails to show where the deceased George Riley died; that it does not show that defendants were presented upon indictment, and that it is not signed by the foreman of the grand jury, and also question the verdict in that it fails to show the degree of murder to which the defendant Luther Mathis was accessory. None of the grounds in said motions are well founded. The indictment is in the usual form and gives dates, places and acts with sufficient definiteness to put the defendants upon full notice of the offense with which they were charged therein, and it was duly signed by the foreman of the grand jury. The objections urged thereto are of the most general nature. See Wharton's Crim. Pl. & Pr. Sec. 760. It was not necessary to state therein the place where the deceased died. Roberson v. State, 42 Fla. 212, 28 South. Rep. 427. A motion in arrest of judgment is not the proper remedy for a wrong verdict. Bacon v. State, 22 Fla. 51.

The forty-ninth error is based upon the action of the court in sustaining the objection of the State to the examination of a venireman, and we have already discussed and disposed of same.

The only remaining error to be considered is the overruling of the motion for a new trial. It contains, as we have said, forty grounds, but most of them have already been considered in disposing of other errors. The defendants introduced no evidence at the trial. We have carefully examined the evidence introduced by the State, and are of the opinion that it is amply sufficient to sus-

tain the verdict. It would be profitless to set it out in detail here.

Finding no reversible error, the judgment of the Circuit Court is affirmed.