470 So.2d 4 (1985)
VIDEO ELECTRONICS, INC.; Porter M. Moore, Individually; and Alton L. Turner and Daniel L. Lindsay, As Executors of the Estate of Rex H. Moore, Deceased, Appellants,
v.
Harry Lamar TEDDER, Appellee.
No. AW-248.
District Court of Appeal of Florida, First District.
March 19, 1985.
John F. Callender, Jacksonville, for appellants.
Daniel D. Richardson, Jacksonville, for appellee.
ZEHMER, Judge.
Video Electronics, Inc., appeals from a final judgment after jury verdict awarding damages to Harry Lamar Tedder for his wrongful discharge from employment by Video Electronics. Three points are presented: (1) Whether the court improperly construed the employment contract and *5 thereby erred in failing to direct a verdict for Video Electronics; (2) whether the court abused its discretion in adopting a jury selection procedure which limited the use of peremptory challenges to backstrike a juror already sworn by the court; and (3) whether the court erred in instructing the jury to evaluate Tedder's employment performance by a "reasonable man" standard. We affirm on issues 1 and 3, and reverse on issue 2.
On October 16, 1981, Harry Tedder signed an employment contract to work for a two-year period as general manager of Video Electronics. Tedder was terminated from employment on August 20, 1982, because he had allegedly misappropriated $119.35 from Video Electronics by submitting duplicate requests for reimbursement of travel expenses. On September 14, 1982, Tedder filed a complaint alleging damages resulting from Video Electronics' breach of his employment contract. Video Electronics defended the suit by alleging that Tedder was properly dismissed from employment because he misappropriated funds and did not adequately perform his duties under the terms of the contract. Video Electronics relied primarily upon three clauses in the employment contract in support of its dismissal of Tedder: (1) The primary duty of the general manager shall be to function "under the direction of the owners of the company"; (2) "At any time ... Tedder may be terminated by the company in the event that he fails to perform his duties as set forth in this contract"; and (3) Tedder "agrees to submit to this company such documentation as may be necessary to substantiate [reimbursed expenses]." Tedder freely admitted he had received improper duplicate payments of travel expenses, but contended that such error was because of negligent oversight by himself and the company bookkeeper. He contended that his performance as general manager was more than satisfactory and that Video Electronics benefited from a consistent rise in revenues while he was general manager.
The technique used by the trial court to impanel the jury was a subject of dispute between the parties and the court. The trial judge allowed each side six peremptory challenges, and an initial panel of six prospective jurors was seated and subjected to voir dire. Each side was then given the opportunity to challenge for cause or to exercise any of their peremptory challenges. Once the challenges were made and the challenged jurors dismissed, new prospective jurors were called to take their places on the panel. The parties were then allowed to voir dire the new prospective jurors and once again exercise their challenges on the entire panel. The court stated it would allow one round of backstrikes and that after such backstrikes it would swear whatever jury members remained. The process proceeded through three rounds without any backstrikes, but during the fourth round appellants' attorney used his fifth peremptory challenge to backstrike a previously accepted prospective juror. After the fourth round, there were four prospective jurors left on the panel and the court immediately swore those jurors. During the fifth round, counsel for appellants attempted to use his final peremptory challenge by backstriking one of the already-sworn jurors. The trial court denied such challenge and, over protest, appellants accepted the final panel and waived their final peremptory challenge.
At trial the jury was instructed, over the objection of Video Electronics, that it should find in favor of Video Electronics only if it found that Tedder had intentionally misappropriated funds or that he did not properly perform his duties as judged by a "reasonable man" standard. The jury returned a verdict finding that Video Electronics had breached its contract by unjustifiably terminating Tedder's employment and that Tedder was entitled to approximately $70,000 in damages. Video Electronics brings this appeal.
The first point on appeal is whether the trial court erred in instructing the jury that Video Electronics would be justified in terminating Tedder's employment only if Tedder's misappropriation of funds was found *6 to be intentional. According to Video Electronics, the trial court improperly rewrote the clear terminology of the employment contract, which indicated that Tedder was required to submit documentation to substantiate his expenses and also stated that Tedder could be terminated at any time if he failed to perform his duties set forth in the contract. Video Electronics relies primarily upon Haiman v. Gundersheimer, 130 Fla. 109, 177 So. 199 (1937), to support its position. In Gundersheimer, the employer had required that expense reports be submitted for all items of expense paid from the petty cash account. The employee had allegedly failed to file such reports, and the trial court submitted the case to the jury on instructions that the jury should find a justifiable discharge only if the employee's breach "constituted a material and not merely trivial departure from the duties of her employment." Id. at 200. The Supreme Court reversed and held that it was the trial court's duty to determine as a matter of law whether the employee's failure to make reports, if found to be true, would constitute a breach of duty warranting discharge of the employee. The court stated it was then a matter of fact for the jury to determine whether or not the employee had in fact failed to make the appropriate reports. Cf. Jimarye, Inc. v. Pipkin, 181 So.2d 669 (Fla. 1st DCA 1966); Strahm v. Aetna Casualty & Surety Co., 285 So.2d 679 (Fla. 3d DCA 1973).
In the present case, the trial court complied with the rule in Gundersheimer when it construed the employment contract and determined that an unintentional mistake in submission and reimbursement of travel expenses would not be a sufficient breach of contract to justify dismissal of Tedder. The court then determined that, under the terms of the contract, an intentional attempt by Tedder to receive double payment for travel expenses would be sufficient cause for dismissal, and the jury was instructed to determine whether Tedder had intentionally attempted to secure double payment of expenses. This construction of the contract was a matter of law for the court, not a question of fact for the jury. Paddock v. Bay Concrete Industries, Inc., 154 So.2d 313 (Fla. 2d DCA 1963). We hold that the trial court followed the proper procedure and did not erroneously construe the contract. We affirm on the first issue.
We also affirm the third point, in which Video Electronics argues that the trial court erred by failing to give Video Electronics' requested jury instruction that it was justified in terminating Tedder's employment if it was in good faith dissatisfied with his performance. The court refused to give this instruction, instead instructing the jury that Tedder's performance was to be judged based upon a "reasonable man" standard. The key question is whether the employment contract specifically indicated that Tedder's performance was to be judged solely by the employer or whether the contract was silent as to how his performance was to be judged. The trial court examined the employment contract and found that the employer had failed to reserve the right under the contract to be the sole judge as to the propriety of Tedder's job performance. Accordingly, the court ruled that the services of Tedder must be judged on a "reasonable man" standard.
We agree with the trial court's ruling. The language in the employment contract relied upon by Video Electronics does not specifically reserve the right to determine whether Tedder's job performance was satisfactory. To that extent, the present case is distinguishable from Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928), and Paddock v. Bay Concrete Industries, Inc., 154 So.2d 313. In the absence of an express reservation by the employer, the general rule is that an employee's job performance is to be judged on a "reasonable man" standard. 53 Am.Jur.2d, Master & Servant, § 51.
Appellant's second point on appeal is that the trial court abused its discretion in employing a jury selection procedure under which the parties were limited to one round of backstrikes before jury members were *7 individually sworn. It is well settled that the court would have committed reversible error had the court denied Video Electronics an opportunity to backstrike a juror prior to that juror being sworn. Florida Rock Industries, Inc. v. United Building Systems, Inc., 408 So.2d 630 (Fla. 5th DCA 1982). See also, Grant v. State, 429 So.2d 758 (Fla. 4th DCA 1983); Jones v. State, 332 So.2d 615 (Fla. 1976). The key distinction in the present case is that the trial court chose to swear four prospective jurors prior to completing selection of the entire panel and prohibited backstriking of the sworn jurors, thereby preventing counsel's consideration of the entire panel as a whole in exercising peremptory challenges. In support of its decision to employ this procedure, the court relied upon cases holding that it is within a trial court's discretion to swear jurors individually rather than as a complete panel. E.g., Mathis v. State, 45 Fla. 46, 34 So. 287 (1903); King v. State, 125 Fla. 316, 169 So. 747 (1936); Bocanegra v. State, 303 So.2d 429 (Fla. 2d DCA 1974).
In King v. State, supra, the Supreme Court quoted the general rule from Mathis as follows:
`The better practice is to postpone the swearing in chief of the jurors until the full panel is obtained, so as to allow the longest possible time for peremptory challenges, but, in the absence of a statutory provision, the rule is that the time and manner of swearing jurors in chief, after they have been examined on voir dire and an opportunity given for challenges, are within the sound judicial discretion of the court, the exercise of which will not be disturbed by an appellate court unless clearly abused.'
169 So. at 748. In Bocanegra, the second district court intimated that there could be circumstances which would necessitate a reversal and new trial if the advice of the Supreme Court in King as to the better practice was not followed. In Grant v. State, 429 So.2d 758 (Fla. 4th DCA 1983), the fourth district was obligated to affirm basically the same procedure used by the trial court in the instant case because appellant's counsel had not attempted to backstrike any of the already-sworn jurors and thus failed to demonstrate any prejudice. Unlike Grant, in the instant case such prejudice has been shown because appellant attempted to backstrike one of the four sworn jurors but was not allowed to do so. King v. State, 461 So.2d 1370 (Fla. 4th DCA 1985).
The opinion in Grant discusses at length the reason for permitting backstrikes until the full jury panel is ready to be sworn:
A lawyer charged with the duty of selecting a jury panel should not be deprived of the opportunity to exercise such peremptory challenges and such challenges for cause which he may have in order to provide him with the greatest opportunity to have a fair and impartial trial by a jury of his peers. In Denham v. State, 421 So.2d 1082 (Fla. 4th DCA 1982), we stated in dicta that the trial court should not prohibit backstriking. Sub judice, the trial judge did not initially offer the accused a full and open jury selection, which he then restricted for reasons within his broad discretion. Rather, at the outset of voir dire he adopted a procedure specifically designed to prevent backstriking. In Denham, appellant failed to properly preserve the question for appeal, but this Court clearly stated that `"Backstriking" or back-challenging should not be prohibited by a trial court.'
429 So.2d at 760. As Judge Hurley stated in his specially concurring opinion in Grant:
The right to the unfettered exercise of peremptory challenges  which, I believe, includes the right to view the panel as a whole before the jury is sworn  is an essential component of the right to trial by jury, a right that `is fundamental to the American scheme of justice.' Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). Given the importance of the right and the grievousness of the error, I would opt for automatic reversal as the only *8 remedy which will surely deter such conduct in the future.
429 So.2d at 760-61.
As was recognized in Eastern Air Lines, Inc. v. Gellert, 438 So.2d 923 (Fla. 3d DCA 1983), the trial court "must exercise [its] discretion so as not to violate the litigant's right to have a fair opportunity to make an intelligent judgment as to exercise of peremptory challenges." Id. at 931. In King v. State, 461 So.2d 1370 (Fla. 4th DCA 1985), the court reviewed a jury selection procedure in which prospective jury members were sworn individually and the court thereby prevented all backstriking. After examining various authorities on the issue, the district court concluded that the trial court had impermissibly limited the ability of the parties to intelligently and effectively use their peremptory challenges and thus had abused its discretion.
With so many appellate decisions over so many years repeatedly cautioning trial courts against failing to follow the better practice, Bocanegra v. State, 303 So.2d 429, and cautioning against unnecessarily limiting a party's right to intelligently and effectively use peremptory challenges by limiting backstrikes of potential jurors before the entire panel is sworn, it would seem that this problem should no longer present itself to the appellate courts. But, unfortunately, that is not the case. More, not fewer, appellants question the trial courts' limitation on backstrikes by prematurely swearing some, but not all, of the jury panel. Any trial lawyer worth his salt knows that a truly effective use of peremptory challenges occurs only if the panel as a whole is considered when exercising such challenges  the so-called better practice. Certainly it has not been demonstrated that selective swearing of jurors to curtail backstrikes so expedites the progress of every trial that, on balance, it outweighs the resulting prejudice to the jury selection process. There is nothing in the record before us to indicate that any exceptional problem peculiar to this case made the limitation on backstrikes necessary. No substantial benefit to the judicial process was shown to have resulted from employing the procedure under review. On the contrary, its only effect was to deny the parties the effective and intelligent use of their peremptory challenges by considering the jury panel as a whole.
The general rule approved in Mathis v. State, 45 Fla. 46, 34 So. 287 (1903), allows the selective swearing of individual jurors only in the exercise of sound discretion. Sound discretion pre-supposes exceptional circumstances not seen in the ordinary case which requires a departure from the recognized better practice. We are, therefore, in complete agreement with the decision in King v. State, 461 So.2d 1370, and hold that the court below abused its discretion in prohibiting the parties from backstriking jurors under the procedure imposed in this case. Fully recognizing that a trial court must have discretion to determine whether potential jurors should be sworn before the entire panel is selected, we conclude that whenever a trial court exercises its discretion to do so and departs from the better practice, the record should reflect substantial reasons therefor arising from exceptional circumstances in the particular case. The premature swearing of jurors solely for the purpose of limiting backstrikes is an arbitrary exercise of unbridled discretion, not sound discretion, and is simply not enough. Adherence to this rule will, we believe, infuse considerable uniformity and consistency in the jury selection process, insure that the better practice is generally followed, and preserve the trial court's discretion to depart from this procedure when exceptional conditions so require. Just as importantly, it should substantially reduce, if not eliminate, many future appeals on this question.
We are convinced that our decision is consistent with the many decisions of the Supreme Court and our sister courts of appeal on this matter, but the frequency of appeals involving similar questions, and the need for definite standards on a statewide basis, compels that we certify to the Supreme *9 Court the following question as one of great public importance:
IN THE ABSENCE OF SUBSTANTIAL REASONS ARISING FROM EXCEPTIONAL CIRCUMSTANCES SHOWN TO EXIST IN THE PARTICULAR CASE, IS IT AN ABUSE OF DISCRETION FOR A TRIAL COURT TO EMPLOY A JURY SELECTION PROCEDURE IN WHICH SOME BUT NOT ALL PROSPECTIVE JURORS ARE SWORN FOR THE PURPOSE OF PROHIBITING THE EXERCISE OF PEREMPTORY CHALLENGES TO BACKSTRIKE SUCH JURORS?
REVERSED and REMANDED for a new trial.
SHIVERS and THOMPSON, JJ., concur.